### CLEVELAND TRUST CO. v. LANDER, TREASURER.

**1. INCORPORATED BANKS TAXED ON CAPITAL STOCK.**

The intent and purpose of sec. 2746, Rev. Stat., is to tax the capital *stock*, not the capital itself, of incorporated banks, whether state or national, existing in this state. The tax is against the shareholder, and the provision for the bank paying it is but a mere method of collecting the tax from the stockholders, the lien being upon the stock, and not upon any property of the bank.

**2. THE TWO METHODS NOT UNEQUAL TAXATION.**

The provision of the statute for obtaining the value of the *capital stock* of an incorporated bank, and for obtaining the value of the *capital* of an unincorporated bank, are merely different methods provided by law for arriving at the true value in money of each kind of property, and they are so nearly equal that the difference in their values would not constitute what is known as unequal taxation.

**3. EXACT EQUALITY NOT ATTEMPTED.**

Taxation laws do not attempt to arrive at exact equality, nor to provide that equivalents shall be of exactly the same value. A substantial equality is all that they attempt to reach.

ERROR to the Court of Common Pleas of Cuyahoga County.

CALDWELL, J.

The plaintiff in error says that it is a corporation organized under the laws of Ohio, and doing a banking business in the city of Cleveland in said state; and that the defendant in error is treasurer of Cuyahoga county, having in his possession the duplicate containing the list of taxes for the year 1898, including all taxes assessed against the plaintiff in error.

The plaintiff in error also says that its capital stock is $500,000 divided into 5,000 shares of $100 each, all of which is paid up and for which certificates are outstanding and owned by a large number of persons, most of whom reside in the state of Ohio. That in accordance with sec. 2765 Rev. Stat., the treasurer of the plaintiff in error reported in duplicate to the auditor of said county of Cuyahoga the resources and liabilities of said banking association at the close of business on the Wednesday next preceding the second Monday of May, 1896, together with a full statement of the names and residences of the stockholders therein, with the number of shares held by each and the par value thereof as required by the statute. That said statement contained the real estate owned by the plaintiff in error, returned at $25,000, which is separately assessed and charged on the tax duplicates of said county and the tax thereon paid to the treasurer of said county aside from the taxes set forth in this petition. This said return also included 174 bonds of the United States, of the denomination of $1,000 each, then and for a long time prior thereto owned by the plaintiff in error and in which the plaintiff in error had invested part of its capital stock. That the bonds were non-taxable under and by virtue of sec. 3701 U. S. Rev. Stat., and that the value of said bonds, as estimated by the treasurer of the plaintiff in error, was $213,274.64 and the same was deducted from the $500,000 par

value of paid up capital stock included in said return among liabilities of plaintiff in error, leaving the balance, as shown by said return, of $286,725.19.

The plaintiff in error further says that said county auditor proceeded as required by sec. 2766, Rev. Stat., to fix, and did fix the total shares of the capital stock of the plaintiff in error at $338,700, exclusive of the assessed value of its real estate.    That in fixing such value, the auditor included said United States government bonds valued as above; that is, the auditor refused to allow the deduction of said amount last named, from the $500,000 par value of paid-in capital stock of plaintiff in error as shown upon its return for 1898.   That it is the regular custom of banks and banking associations throughout the state of Ohio to deduct the value of government bonds owned by them, from the paid-in capital stock returned, although not so apparent upon the face of their returns to the several county auditors.   That said bonds were, by the banks and banking associations of this state, so deducted in the return for 1897. That similar deductions of the United States government bonds are likewise made by unincorporated banks in the state of Ohio under and by virtue of sec. 2759, Rev. Stat.   That the auditor of Cuyahoga county, and the county auditors elsewhere throughout the state, as this plaintiff is informed and believes, did not include the United States government bonds so owned, in fixing the total value for 1898 of the shares of the several incorporated banks of Ohio as directed by sec. 2766, Rev. Stat.

That the auditor of Cuyahoga county thereafter entered said valuation upon the tax duplicate of said county for the year 1898 and did assess taxes against the same at the same percentage of taxation as other property was assessed in said county.

It is averred in the petition that the duplicate required to be made out by the auditor has been made and placed in the hands of the county treasurer and he is about to proceed to collect said taxes so illegally assessed.

The petition proceeds further to state the difficulties and litigation that will arise if the lien for taxes on the shares is permitted to remain as it now stands, and will greatly impair the standing and credit of the plaintiff in error and would injuriously affect all its ordinary business and introduce uncertainty and confusion into its transactions and consequent loss of public confidence upon which its success depends, and if the plaintiff should pay said illegal taxes and undertake to deduct them from dividends thereafter arising out of the business of the plaintiff in error, a multitude of suits would arise which would greatly harass and prejudice the plaintiff in error in the eyes of the public.

The petition further states that that portion of the tax legally assessed has been tendered to the defendant and is brought into court to keep the same good as a legal tender of that part of the tax that the plaintiff in error should pay.   And the plaintiff in error prays for an order and decree of the court restraining and enjoining the said defendant in error as treasurer of said Cuyahoga county, during the pendency of this action, and his successor and successors in office, from collecting or attempting to collect from the plaintiff in error or from its said individual share-holders by distraint or otherwise, any of said taxes, as the same now stand charged on the duplicate in said county, levied upon, or by means of the United States government bonds owned by this plaintiff in error, permitting, however, said treasurer, without prejudice to his right in the premises to receive the amounts as aforesaid tendered by

plaintiff in error to him; and that said defendant in error, his successor and successors in office, may, upon final hearing, be perpetually enjoined from collecting or attempting to collect the taxes as aforesaid; and that the plaintiff in error may have such relief in the premises as good conscience and equity require.

To this petition a demurrer was filed on the ground that it did not state facts to constitute a cause of action.

The demurrer was sustained; and the plaintiff in error not desiring to plead further a judgment was entered below dismissing his petition and he comes into this court to have that judgment reversed.

The real question to be determined in this case is: Under the taxing laws of this state, can a bank come into court and require the taxing officers to confine the taxation, as provided in the statutes, to the capital stock of bank or the values of the shares less any government bonds held by the bank?

Section 4 of art., 13 of the constitution of 1851 provides that;

"The property of corporations now existing or hereafter created shall forever be subject to taxation the same as the property of individuals."

Section 2 art. 12, the general section relative to taxation by uniform rules, and sec. 3 art., 12, refer to the taxation of banks:

"The general assembly shall proivde by law for taxing the notes and bills discounted or purchased, moneys loaned, and all other property effects or dues of every description (without deduction) of all banks now existing, or hereafter created, and of all bankers, so that all property employed in banking, shall always bear a burden of taxation equal to that imposed on the property of individuals."

After the adoption of this constitution, the legislature, in 50 O. L., 135, sec. 19, page 144, provided:

"It shall be the duty of the president and cashier of every bank or banking company, that shall have been or may hereafter be incorporated by the laws of this statute, and having the right to issue bills for circulation as money, to make out and return under oath, to the auditor of the county in which such bank or banking company may be situated, in the month of May, annually, a written statement containing,

"1st. The average amount of notes and bills discounted or purchased by such bank or banking company, which amount shall include all the loans or discounts of such bank or banking company, whether originally made or renewed during the year aforesaid, or at any time previous; whether made on bills of exchange, notes, bonds, mortgages, or any other evidence of indebtedness (at their actual value in money), whether due previous to, during, or after the period aforesaid; and on which such bank or banking company has at any time reserved or received, or is entitled to receive, any profit or other consideration whatever, either in the shape of interest, discount, exchange, or otherwise.

"2nd. The average amount of all other moneys, effects, or dues of every description belonging to such bank or banking company, loaned, invested or otherwise used or employed with a view to profit, or upon which such bank or banking company receives or is entitled to receive interest."

In 1861, 58 O. L., 59, the law was further amended and again the annual statement as required to be filed by the officers of the bank, provided for a return of the property of the bank and upon the total property after the proper deductions.

In 1867, 64 O. L., 204, the law which practically is the present law, was adopted by the legislature and which changed very materially the method of making the return of the property of the bank. This law was, undoubtedly, the result of a decision of the United States court regarding the taxation of shares in national banks and the statute passed allowing the legislature of a state to tax the shares in national banks. Section 1, page 204 reads:

"Be it enacted by the general assembly of the state of Ohio, that all the shares of the stockholders in any bank or banking association, located in this state, whether now or hereafter incorporated or organized under the laws of this state or of the United States, shall be listed at their true value in money, and taxed in the city, ward or town, where such bank is located, and not eleswhere."

The other sections of that law are such as we still retain substantially in secs. 2758 to 2769, Rev. Stat.

After the adoption of the constitution, the statutes referred to passed prior to 64 O. L., 204, had for their object, taxing the property of the corporation directly.

After the institution of national banks, the law contained in 64 O. L., 204, was passed, and the evident intention of the legislature was that all incorporated banks within the state, whether organized under the state law or the United States law, should be, and remain, exempt from the taxation except upon real estate, and some articles of personal property, and that in lieu thereof the shares of capital stock, held in the bank, should be taxed.

The first objection made to this is that the constitution as above referred to provides that the capital of the bank shall be taxed. This provision of the constitution will not enforce itself, but it is necessary to carry out that provision that the legislature should make proper and ample provision by statute.

In Frazer et al. v. Sievern, Auditor, 16 Ohio St., 618, at page 623, it is stated that the constitution does not on such matters execute itself.

As heretofore stated the intent of the legislature was to no longer provide for taxing the capital of incorporated banks existing within the state of Ohio, but, in lieu thereof, to tax the shares.

It is claimed on behalf of the plaintiff in error, that the provisions contained in the sections pertaining to taxation of incorporated banks are, after all, mere provisions for taxing the capital of the bank and that, while they seem to read as providing a tax upon the shares of the capital stock of the bank, yet they are in reality and within the intention of the legislature mere provisions for the taxing of the capital of the bank itself.

The capital of the bank, and the property in the shares of the bank, are distinct kinds of property and are not the same property although they depend upon the same basis largely for their value. They may, or may not, be exact equivalents. The stock may have a greater or less market value than the real value of the property of the bank, yet it has been the purpose of the legislature through a long series of years, on account of the fact that these properties both spring from the same investments and from the same parent source, not to tax both, but to tax only one; and, if one is taxed, it has been the policy of the law to exempt the other.

We cannot read the sections referred to in our statute, without being convinced that the intent and purpose of the Legislature was to provide for the taxing of the shares of stock in the bank, and not the bank itself.

In Miller, Tr., v. Bank, 46 Ohio St., 424, the court, after reviewing these various sections and considering to some extent their provisions, says, on page 430:

"Each and every provision of this section contemplates an assessment upon shares in the name of the shareholder, and are inconsistent with any other practice. The lien is fastened on the shares, and in case of the non-payment of the tax 'by any shareholder,' the consequence is visited upon him, and no one else."

It must be regarded, we think as fully determined by the Supreme Court of the state, that the intent and purpose was to tax the shares, and not the capital stock.

The plaintiff in error in this case, insists that as unincorporated banks may set forth any government bonds they may hold, and only be taxed on the surplus of its capital over and above such bonds, that not allowing to stockholders of incorporated banks the same privilege is making a distinction that is not permitted under the laws of the state and works an inequality. This comparison is made beteewn an incorporated and an unincorporated bank; but, as we have already said, it is not the intent or purpose of the statutes to tax an incorporated bank as such, but the individuals who are taxed upon their shares of stock, have the same privilege of setting forth or of diminishing the amount of property on which they are taxed, by government bonds, the same as may an unincorporated bank. So that the statute in reality, or the statute in fact, provides the same exemption for an individual who pays on the bank stock, that it does for an unincorporated bank. And, in connection with this proposition, it is urged that inasmuch as the property of the bank and the property of the shares of the bank are recognized as the same property in so far that as taxing of both would be double taxation, that the individual share-holders should have all the privileges by way of set-off that the bank would have if the tax as upon it directly. But this has not been the holding of the courts; but the courts, so far as this question has come before them, have held that shares may be taxed at their money value, though all or a portion of the capital of the bank is invested in United States securities.

Williams v. Weaver, 75, N. Y., 30; Peoples v. Gallatin, National Bank, 8 Hun., 536; First National Bank v. Farwell, 7 Fed. Rep., 518:

It is insisted that this construction of the statutes above referred to leads to inequality, for the reason that a taxation of the shares of stock is not the equivalent of the taxation of the capital of the bank, and that the inequality arises between the unincorporated bank and the incorporated bank and grows out of a different method of ascertaining the taxable value of the property.

It is insisted that the capital stock of a bank may have a market value which is the equivalent of the real value in money, far in excess of the capital of the bank and if the incorporated bank is required to pay taxes upon such valuation, it may pay a greater tax on the same amount of property than does an unincorporated bank.

One trouble with this proposition is, that it still confines the value of the property in stock to the real value of the property owned by the bank that issues the stock and thus obtaining a contrast between the two banks.

It can not be said that the individuals owning the stock and paying taxes on its value in money pay any greater tax than does the unincorporated bank when it pays on the value of its capital.

Trust Co. v. Lander.

While it is often the case that the total value of the shares of stock is more or less than the capital of the corporation issuing such shares, yet, for taxing purposes, they have been, by our State, regarded as equivalents.

Section 2746, Rev. Stat., provides:

"Personal property of every description, moneys and credits, investments in bonds, stocks, joint stock companies, or otherwise, shall be listed in the name of the person who was owner thereof on the day preceding the second Monday of April, in each year; but no person shall be required to list for taxation any share or shares of the capital stock of any company, the capital stock of which is taxed in the name of such company."

The legislature intended evidently, by this section, to make the capital stock of any bank the equivalent of the capital of the company, otherwise it would have provided for the exemption of the capital stock in a domestic corporation from taxation, only so far as one should equal the other; and, if the stock had a surplus value over the capital of the company, then such surplus should be taxed; but the taxing laws do not attempt to arrive at exact equality, nor that equivalents shall be of exactly the same value, but a substantial equality is all that they attempt to reach.

This being the provision of our statutes, there can be no real objection in treating the stock of an incorporated bank as the equivalent of the capital of the bank, and the inequality insisted upon by the plaintiff in error, does not arise unless exact equality is insisted upon.

Our conclusion, in this case, is, that the intent and purpose of the statute is to tax the capital stock of incorporated banks, whether state or national, existing in this state, and not to tax the capital of the bank itself any further than such tax upon the stock may be regarded the equivalent of taxing the capital: that the tax is against the share-holder, and the provision for the banks paying it is not a provision for the bank paying its own tax, but a mere method of collecting the tax from the stock-holders, and the lien is upon no property of the bank but entirely upon that of the stock-holder. That after the dividend is declared by the bank, it becomes the property of the share-holder and not until the time of declaring such dividend does the tax become a lien upon the same.

Requiring the bank to pay the treasurer, is but another method of requiring the stock-holder to pay his tax. The bank owes the stock-holder, the stockholder owes the county, or owes the treasurer; and it is a permssible provision of the law that the bank shall pay its debt, not to the stock-holder, but to the treasurer to the extent of the treasurer's claim against the stock-holder.

That the provision of the statute for obtaining the value of the capital stock of a bank, and the provisions for obtaining the value of the capital of an unincorporated bank, are merely different methods provided by law, which is permissible, for arriving at the true value in money of each kind of property; and that, under our statutes it has long been the practice of our legislature to treat the capital stock of the company as the equivalent of the capital of the company, and they are so nearly equal that the difference in their values would not constitute what is known as inequality in taxation.

These conclusions lead to our final conclusion: That no tax has been assessed against the plaintiff in error; that it owes no tax of its

own to the defendant in error. There is, therefore, no tax that it can ask the courts to enjoin; it cannot appear for its stock-holders.

The plaintiff in error, therefore, has no ground upon which to rest its complaint.

The judgment below is affirmed.

*Garfield Garfield & Howe*, for plaintiff in error:

*Kaiser & Taft*, for defendant in error.